**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROKIT WORLD, INC.,

    Plaintiff,

vs.                                Case No. 3:24-cv-878-MMH-LLL

WILLIAMS GRAND PRIX
ENGINEERING LIMITED, et al.,

    Defendants.

# O R D E R

**THIS CAUSE** is before the Court on Defendants' Omnibus Motion to Dismiss (Doc. 20; Motion) filed on February 18, 2025. Plaintiff filed a response in opposition to the Motion. See Plaintiff's Response in Opposition to Omnibus Motion to Dismiss (Doc. 35; Response), filed March 25, 2025. With leave of Court, Defendants filed a reply. See Order (Doc. 40), entered April 18, 2025; Defendants' Reply in Support of Omnibus Motion to Dismiss (Doc. 42; Reply), filed May 5, 2025. Accordingly, this matter is ripe for review.

## I. Procedural History

ROKiT World, Inc. (ROKiT) initiated this action on August 23, 2024, by filing a six-count Complaint (Doc. 1) against Williams Grand Prix Engineering Limited (Williams Engineering), Claire Williams, Michael O'Driscoll, and Douglas Lafferty (collectively "Defendants"). In particular, ROKiT asserts

claims for: (1) fraud against Williams Engineering; (2) fraud against Williams; (3) fraud against O'Driscoll; and (4) fraud against Lafferty. See Complaint at 16–21. ROKiT also seeks (5) to set aside the arbitration award entered against it by the London Court of International Arbitration (LCIA) and (6) relief from the Central District of California's judgment confirming the LCIA's arbitration award. Id. at 22–23.

As alleged in the Complaint, Williams Engineering is a Formula One racing team that competes in the Formula One World Championship. Id. ¶ 4. ROKiT is the parent company of Able Events, Inc. (Able) and Combine Enterprises, LLC (Combine). Id. ¶ 3. In 2019, Williams Engineering and Able "entered into a 3-year Title Sponsorship Agreement," and Williams Engineering and Combine "entered into a 4-year Drinks Sponsorship Agreement[.]" Id. ¶¶ 12, 16 (the "Sponsorship Agreements"). Pursuant to the Sponsorship Agreements, Williams Engineering agreed to display the "'ROKiT' logo on its cars, driver helmets, mechanic helmets, driver overalls, mechanic overalls, team kit, merchandise kit, and team environment" in exchange for "£13,500,000.00 per annum[.]" Id. ¶¶ 13, 15, 17.

On April 7, 2020, Williams Engineering notified Able and Combine "that they had breached [the] Sponsorship Agreements" by failing to make timely payments. Id. ¶ 24. "[T]he parties were unable to resolve [this] issue informally," and the dispute went to arbitration before the LCIA. Id. ¶ 27. The

LCIA "ultimately sided with Williams Engineering" and entered an award in its favor. Id. The LCIA's award was then confirmed by the Central District of California. Id. ¶ 84.

According to ROKiT, following confirmation of the LCIA's award, it discovered that Defendants had fraudulently concealed "material facts" during the negotiation of the Sponsorship Agreements. Id. ¶ 27. Specifically, "prior to the execution of the Sponsorship Agreements," Jonathan Kendrick (ROKiT's Director) met with Defendants at "Williams Engineering headquarters" in the United Kingdom. Id. ¶ 36. During this meeting, Defendants "claimed that the F1 car which would be subject to the Sponsorship Agreements . . . would have excellent chances to be competitive, would place in the upper side of the leaderboard, and would not be slower than the 2018 Williams F1 car." Id. These promises did not come to fruition, however, and the car developed by Williams Engineering "was the slowest car in F1 since 2019 and by such a wide margin as to be completely uncompetitive[.]" Id. ¶ 35. ROKiT has since "confirmed with certainty [that] the car was never capable of performing to the standards that Defendants had guaranteed to the Plaintiff's subsidiaries, and that Defendants were aware of and fraudulently concealed this fact to the Plaintiff's subsidiaries as well as during the arbitration process." Id. ¶ 30. As such, ROKiT alleges that had it "known that the F1 car . . . was grossly substandard and had no chance of being competitive, Able Events and Combine would never have entered into

any Sponsorship Agreements with Williams Engineering to display Plaintiff's 'ROKiT' logo." Id. ¶ 42.

In the Motion, Defendants raise five arguments for dismissal. First, Defendants contend that ROKiT's claims are due to be dismissed for lack of personal jurisdiction; second, ROKiT's fraud claims are due to be dismissed for improper venue; third, ROKiT's claims are due to be dismissed based upon forum non conveniens; fourth, ROKiT's claims involving the arbitration award are due to be dismissed for lack of subject matter jurisdiction; and finally, ROKiT's claims are due to be dismissed for failure to state a claim. See Motion at 9, 22, 33, 41, 46. ROKiT opposes the Motion in its entirety. See Response at 28. For the reasons that follow, the Court finds that it lacks personal jurisdiction over Defendants. As such, the Court will not address Defendants' other arguments in support of dismissal.

## II. Legal Standard

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Federal Rules of Civil Procedure (Rule(s)), the "plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back

to the plaintiff to produce evidence supporting jurisdiction.'" Id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)). In ruling on a motion to dismiss for lack of personal jurisdiction, a district court has discretion to conduct an evidentiary hearing. See Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). However, where the court does not conduct a hearing, "the plaintiff must present only a prima facie showing of . . . personal jurisdiction." Id.

A plaintiff makes a prima facie showing by presenting evidence sufficient to withstand a motion for directed verdict on the issue of personal jurisdiction. See Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). Thus, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits[,]" and "where the evidence presented by the parties' affidavits . . . conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." Id. (citing Delong Equip. Co., 840 F.2d at 845); see also Mazer, 556 F.3d at 1274 (citing Polski Linie Oceaniczne v. Seasafe Transp. A/S, 795 F.2d 968, 972 (11th Cir. 1986)) (noting that, if the defendant rebuts the jurisdictional allegations in the plaintiff's complaint, "the plaintiff is required to substantiate [its] jurisdictional allegations . . . by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint"). This construction in favor of the

plaintiff is particularly necessary where the jurisdictional questions are intertwined with the merits of a case. See Delong Equip. Co., 840 F.2d at 845.

In accordance with this legal framework, the Court will summarize the facts alleged in the Complaint as relevant to personal jurisdiction, and then review the evidence put forth by the parties as to the question of personal jurisdiction, all the while construing the alleged facts and evidence in favor of ROKiT. See Morris, 843 F.2d at 492.

### III. Relevant Facts

In the Complaint, ROKiT includes the following allegations relevant to personal jurisdiction:

4. Williams Engineering is a private limited company incorporated in England and Wales. Its primary place of business is in England. Williams Engineering does substantial and continued business in Florida and on information and belief in this judicial district, as one of its two drivers, Logan Sargeant, is a citizen of Florida. Furthermore, William [sic] Engineering has competed in the Miami Grand Prix every single year between 2022 and 2024 as well, a major Formula One ("F1") competition.

5. Ms. Williams is an individual and a citizen and resident of the United Kingdom. She was until September 3, 2020, a director of Williams Engineering.

6. Mr. O'Driscoll is an individual and a citizen and resident of the United Kingdom. He was until August 21, 2020, a director of Williams Engineering.

7. Mr. Lafferty [is] an individual and a citizen and resident of the United Kingdom. He was until August 21, 2020, a director of Williams Engineering.

See Complaint ¶¶ 4–7.[1]

In support of the Motion, Defendants submit declarations from Claire Williams, Douglas Lafferty, Michael O'Driscoll, and Mark Biddle. See Declaration of Claire Williams (Doc. 20-6; Williams Declaration); Declaration of Douglas Lafferty (Doc. 20-7; Lafferty Declaration); Declaration of Michael O'Driscoll (Doc. 20-8; O'Driscoll Declaration); Declaration of Mark Biddle (Doc. 20-9; Biddle Declaration). Defendants do not dispute the

---

[1] The Court is skeptical that ROKiT has correctly alleged the citizenship of Williams Engineering. "Notably, courts within the Eleventh Circuit have questioned whether a limited company organized under the laws of the United Kingdom is treated akin to a corporation, or more like a limited partnership, limited liability company, or syndicate." Standby Rsg Ltd. v. Brooking Techs., LLC, No. 3:24-cv-1218-MMH-SJH, 2024 WL 5111814, at * 1 (M.D. Fla. Dec. 13, 2024) (collecting cases). If Williams Engineering is more akin to a limited company, to establish its citizenship, ROKiT must identify each of its members and their respective citizenship. See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004). However, as the Court readily concludes that it lacks personal jurisdiction over Defendants, the Court need not determine whether it also lacks subject matter jurisdiction. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 588 (1999) (noting that when a "district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction").

allegations in the Complaint as they pertain to their citizenship.[2] But, Williams Engineering does dispute that it has substantial ties to Florida, stating that:

5. Williams raced in the inaugural Miami Grand Prix on May 6–8, 2022, and in the subsequent Miami Grand Prix on May 5–7, 2023, and May 3–5, 2024. Williams has otherwise never raced or competed in Florida. There was no Miami Grand Prix scheduled in the 2020 or 2021 seasons.

6. The ROKiT logo and branding was not on the Williams car or any other team asset for the 2022, 2023, or 2024 Miami Grand Prix.

7. Other than attending the Miami Grand Prix once each year, Williams does not operate in Florida and has no employees in Florida.

8. Williams engaged Logan Sargeant as one of its drivers for the 2023 Formula 1 season and a portion of the 2024 season. Sargeant was born in Florida and moved to Europe at age 12. Sargeant resided in London, England for the duration of his engagement as a Formula 1 driver with Williams. Williams ended its engagement with Sargeant in December 2024.

See Biddle Declaration ¶¶ 5–8.

---

[2] O'Driscoll clarifies in his Declaration that he is a dual citizen of the United States and the United Kingdom, but is domiciled in New Jersey. See O'Driscoll Declaration ¶ 3; Motion at 14.

In its Response, ROKiT attempts to cast doubt on the veracity of Biddle's Declaration. Specifically, Jonathan Kendrick (ROKiT's Director) states that:

7. On information and belief, Williams Engineering conducts regular business activities in Florida and in this judicial district. For example, one of its drivers, Logan Sargeant, is a Florida native and may reside in the district, a fact which can be confirmed in discovery if needed.

8. Williams Engineering has competed in the Miami Grand Prix every year from 2022 through 2024 and is expected to participate again in 2025. This race and related marketing activities constitute a substantial component of Williams Engineering's commercial efforts within Florida.

See Sworn Declaration of Jonathan Kendrick ¶¶ 7–8 (Doc. 35; Kendrick Declaration).

### IV. Discussion

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." See Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008). Thus, to determine whether personal jurisdiction exists over Defendants, the Court must engage in a two-part inquiry. See Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004). First, the Court must determine "whether the exercise of jurisdiction is appropriate under [Florida]'s long-arm statute."

Id. (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)). Second, the Court must consider whether exercising personal jurisdiction over Defendants is consistent with "the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Sculptchair, Inc., 94 F.3d at 626). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) (internal quotations omitted).

Turning to the first prong, Florida's long-arm statute—Florida Statutes section 48.193—confers two types of jurisdiction. See NW Aircraft Capital Corp. v. Stewart, 842 So. 2d 190, 193–95 (Fla. 5th DCA 2003). First, section 48.193(2) "provides that Florida courts may exercise general personal jurisdiction" if the defendant engages in "substantial and not isolated activity" in Florida, whether or not the claims asserted actually involve the defendant's activities in Florida. See Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1204 (11th Cir. 2015) (emphasis in original). Second, section 48.193(1) lists enumerated acts which will confer specific personal jurisdiction over a defendant for suits arising from those acts. See Fla. Stat. § 48.193(1)(a). Relevant here, Florida's long-arm

statute permits the exercise of specific personal jurisdiction where the cause of action arises out of:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state.

See Fla. Stat. § 48.193(1)(a)(1)–(2). The reach of Florida's long-arm statute is a question of Florida law. See Meier, 288 F.3d at 1271. Thus, this Court must construe the long-arm statute as would the Florida Supreme Court, and, absent some indication that the Florida Supreme Court would hold otherwise, this Court is bound to adhere to decisions of Florida's intermediate courts. Id.

In addition to the issue of long-arm jurisdiction, the Court must consider whether the exercise of personal jurisdiction over Defendants in this case "would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" Mut. Serv. Ins. Co., 358 F.3d at 1319 (quoting Sculptchair, Inc., 94 F.3d at 626). A determination of whether exercising personal jurisdiction comports with the requirements of due process also requires a two-part inquiry. See Sculptchair, Inc., 94 F.3d at 630–31. First, the Court looks to see whether

Defendants have sufficient "minimum contacts" with the state of Florida. See id. at 630. In Licciardello, the Eleventh Circuit explained that:

> The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has "fair warning" that he may be subject to suit there. This "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. In this way, the defendant could have reasonably anticipated being sued in the forum's courts in connection with his activities there.

Licciardello, 544 F.3d at 1284 (internal citations omitted). Second, the Court must determine whether the exercise of jurisdiction over the defendant "would offend 'traditional notions of fair play and substantial justice.'" Sculptchair, Inc., 94 F.3d at 630–31 (quoting Robinson, 74 F.3d at 258). Factors relevant to this inquiry "include 'the burden on the defendant, the interests of the forum . . . and the plaintiff's interest in obtaining relief.'" Id. at 631 (quoting Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987)).

In the Motion, Defendants contend that the Court lacks both general personal jurisdiction and specific personal jurisdiction. See Motion at 13, 19. The Court will address each argument in turn.

### A. General Personal Jurisdiction

At the outset, "the paradigm forum for the exercise of general jurisdiction is [an] individual's domicile," and "for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Goodyear Dunlop

Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). Here, ROKiT concedes that neither Williams Engineering nor the individual Defendants are domiciled in Florida. See Complaint ¶¶ 4–7. Nonetheless, Florida's long-arm statute "allows the district court to assert general personal jurisdiction over a nonresident defendant," see Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1361 (11th Cir. 2006), but only if the defendant "is engaged in substantial and not isolated activity within" the State, see Fla. Stat. § 48.193(2). To determine whether a defendant is engaged in "substantial activity," the defendant's actions "must be considered collectively and show a general course of business activity in the State for pecuniary benefit." Stubbs, 447 F.3d at 1361 (quotation omitted).

ROKiT contends that Defendants are subject to general personal jurisdiction because they "participate in the Miami Grand Prix every single year," "one of [their] only two drivers at all times material to this Complaint, Logan Sargeant, has a long history of having resided in Florida," and they have "contracted with subsidiaries of [ROKiT]—which does substantial business in Florida[.]" Response at 9. Each of these arguments is unavailing. First, the Miami Grand Prix represents only one of twenty-one international races that Williams Engineering participates in each year. See Biddle Declaration ¶ 4. Indeed, according to Biddle, "other than attending the Miami Grand Prix once each year, Williams Engineering does not operate in Florida and has no

employees in Florida." Id. ¶ 7 (alterations omitted). ROKiT does not attempt to rebut this evidence. Thus, the Court readily concludes that Williams Engineering's participation in the Miami Grand Prix does not constitute "a general course of business activity in the State[.]" Stubbs, 447 F.3d at 1361. Next, ROKiT has failed to provide any legal authority to support the contention that Defendants' employment of Logan Sargeant (who may be a resident of Florida) is sufficient for the Court to exercise general personal jurisdiction over Williams Engineering, much less over the individual Defendants. See Kendrick Declaration ¶ 7. Finally, although ROKiT alleges that it "has physical business locations in this judicial district and conducts substantial business within the Middle District of Florida," see id. ¶ 4, ROKiT has failed to advance any evidence to suggest that Defendants "conduct substantial business" in the State, see Polski, 795 F.2d at 972 (noting that, if the defendant rebuts the jurisdictional allegations in the plaintiff's complaint, "the plaintiff is required to substantiate [its] jurisdictional allegations . . . by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."). For these reasons, ROKiT has failed to make a prima facie showing that Defendants are subject to general personal jurisdiction. See Delong Equip. Co., 840 F.2d at 845.

### B. Specific Personal Jurisdiction

Under Florida's long-arm statute, the Court may exercise specific personal jurisdiction if the "cause of action arises" out of the defendant "operating, conducting, engaging in, or carrying on a business or business venture in this state," see Fla. Stat. § 48.193(1)(a)(1), or "committing a tortious act within this state," see Fla. Stat. § 48.193(1)(a)(2). Here, ROKiT raises the same arguments addressed above, but also contends that Defendants "targeted the state of Florida" with their "false and fraudulent statements[.]" Response at 10. Again, each argument is unavailing. Notably, ROKiT has failed to offer any evidence that Defendants' participation in the Miami Grand Prix, or employment of Logan Sargeant, is related to its claims for fraudulent inducement. See Fla. Stat. § 48.193(1)(a)(1); Canale v. Rubin, 20 So. 3d 463, 466 (Fla. 2nd DCA 2009) (noting that specific personal jurisdiction "requires a causal connection between the defendant's activities in Florida and the plaintiff's cause of action, a requirement known as 'connexity'"). Moreover, as Defendants' allegedly false and misleading statements were made in the United Kingdom, and not Florida, ROKiT has failed to proffer any evidence that Defendants committed a tortious act within the State. See Fla. Stat. § 48.193(1)(a)(2); Complaint ¶ 36. For these reasons, ROKiT has also failed to make a prima facie showing that Defendants are subject to specific personal jurisdiction. See Delong Equip. Co., 840 F.2d at 845.

## V. Conclusion

For the foregoing reasons, the Court finds that it lacks personal jurisdiction over Defendants.[3]

Accordingly, it is

**ORDERED:**

1. Defendants' Omnibus Motion to Dismiss (Doc. 20) is **GRANTED** to the extent that this case is **DISMISSED without prejudice** for lack of personal jurisdiction.

2. The Clerk of the Court is **DIRECTED** to close the file and terminate any pending motions.

**DONE AND ORDERED** in Jacksonville, Florida this 20th day of August, 2025.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

Lc32

Copies to:
Counsel of Record

---

[3] In light of this finding, the Court need not address whether the exercise of personal jurisdiction over Defendants would also violate Due Process.